Ace Number 17-1024 et al., Michichem Fluor, Inc., Petitioner v. Environmental Protection Agency. Mr. Hillenfarb for the Petitioners. Ms. Carlson for the Respondent. Mr. Lorenzen for the Intervenor Respondent. Good morning. Thank you, Judge Rogers, and may it please the Court. The briefing in this case has narrowed the issues to a single one, whether the petitions for review were timely filed. Petitioners and Respondent EPA say they were. Intervenors say they were not. If the petitions were timely filed, there is no dispute about what should follow. The petition should be granted, the rule should be vacated to the same extent as in Mexichem I, and the case should be remanded to the agency. We have asserted a number of different grounds for rejecting intervenors' claim of untimeliness, but unless directed elsewhere by the Court, I plan to focus my argument on what we consider to be the most straightforward way to resolve this case, which is collateral estoppel. In Mexichem I, a claim of untimeliness was raised and contested by the parties, both in the briefs and in oral argument. The Court nevertheless granted relief to petitioners and thus necessarily rejected the jurisdictional objection. This case involves the same issue and the same parties, so collateral estoppel bars intervenors' claim here. Collateral estoppel applies to a jurisdictional issue in the same way it applies to any other. Intervenors do not dispute this. And while the Court may not have explicitly discussed the timeliness issue in Mexichem I, that makes no difference, at least as far as collateral estoppel is concerned. All that matters is whether the issue was raised and contested, and whether the Court necessarily decided it. Intervenors do not dispute this either. What do intervenors dispute? In their brief, they make only a single argument on collateral estoppel, which is that the jurisdictional issue wasn't necessarily decided because the Court's statements in Mexichem I about whether EPA's position on what the statute meant was new or old were dicta. At least as far as our collateral estoppel argument is concerned, this is a non sequitur. Our collateral estoppel argument does not depend on what this Court said in Mexichem I about whether EPA's position was old or new. But we have different parties in this case. At least we have one different party in this case, Boeing. That's right. Boeing was not a party in Mexichem I. Boeing moved to intervene in this case. It was granted leave to intervene. It hasn't participated since. So it's obviously not asserting a jurisdictional objection, and perhaps more fundamentally, at least based on EPA's representation, which in turn is based on EPA's communication with counsel for Boeing, it's our understanding that Boeing supports partial decatur in this case. In other words, it is now effectively aligned with petitioners at EPA. So the only parties asserting the jurisdiction. How do we know any of that? I mean, how do we know that Boeing isn't perfectly pleased to join the jurisdictional objections that have been raised? Well, I guess I would say two things. One is it hasn't said that. It had the ability to participate. It could have filed joined interveners brief. It decided not to do that. The other thing is, based on EPA's representation, it's not only not aligned with interveners, it's now aligned with petitioners in EPA. So from your perspective, it really doesn't matter which position it's taking. I'm sorry, which position Boeing is taking. Because the collateral estoppel would apply to anyone who was in Mexichem I. And then if Boeing wants to raise any objection, it's free to do so. That's right. I mean, if Boeing had participated and filed a brief and raised a jurisdictional objection, I think our collateral estoppel argument would be a lot more difficult. I think we'd still have the story of decisive argument and we'd still have the argument we make on the merits. But it would be it would be different if Boeing were participating in asserting this objection. Unless the court has further questions at this time, I'd like to reserve the remainder of my time for rebuttal. May it please the court. My name is Ben Carlyle from the Department of Justice on behalf of EPA. At counsel's table are Diane McConkey and Jan Tierney from EPA's Office of General Counsel. EPA, like petitioners, asks only that the court reach the same result on materially identical facts as it did in Mexichem I and refuse to allow interveners a fourth bite at the apple to litigate this court's jurisdiction. It is not disputed in this case that the facts are materially identical to those in Mexichem I, and it is not disputed that the jurisdictional issue that interveners raise is the exact same issue that was raised in Mexichem I and expressly and repeatedly briefed. EPA's opening brief made this argument directly. Petitioners vigorously disputed it, and interveners and petitioners raised it again in their petitions for rehearing. It is also not disputed that the court made the exact findings necessary to resolve this issue. The court found both that EPA had previously stated it did not possess the authority at issue and that the 2015 rule represented, quote, a new interpretation of EPA's authority. The Mexichem I majority restated this conclusion multiple times. So intervener points to some record evidence suggesting that the 1994 rule really anticipated the situation of the 2016 rule. Why isn't that a good argument? Respectfully, Your Honor, because it is foreclosed by both stare decisis and collateral estoppel. That is an argument on the substance of the jurisdictional issue. Well, it goes to timeliness. But it is our view that the timeliness question is decided by Mexichem I. It's the same findings at issue in Mexichem I as to whether EPA changed its interpretation, and our view is that the court made the findings necessary to resolve that question. So I just want to be clear on your position. You're saying it does or does not matter whether Mexichem I decided there was a change in interpretation by the agency. Respectfully, Your Honor, it does matter that Mexichem I decided that issue. That is what gives this stare decisis effect. And therefore, if intervener were correct that the 1994 rule essentially anticipated the situation we face now, why doesn't that give some pause to your position? Because that's an argument, Your Honor, that the Mexichem I panel was wrong, and this court is bound by the opinion of Mexichem I even if it happens to disagree with that conclusion. So I'm intrigued by the notion that hypothetically had this court ruled and subsequently were convinced that it had made an error that was, let's just say, in my hypothetical clear on the record, and that has now been brought to the court's attention, the only thing we could do would be to rehear the case in bank? I believe that's correct, Your Honor. The interveners raised this issue on petitions for rehearing in Mexichem I, and that was the proper venue to raise that. They then petitioned for certiorari and alluded to this issue but didn't offer it as a question presented. The mandate is issued, and that decision has a preclusive effect at this point. I'll note also, Your Honor, that the court decided this issue expressly citing the record in the 1994 rule, particularly EPA's response to comments and the Oz Technology petition. And this was a determination that was not dicta as responded in the intervener's claim because it was pivotal to the question of jurisdiction. Why are you arguing for us to issue the same relief in this case as we did in Mexichem I when you're taking the position in rulemaking that you can't really administer the relief issued in Mexichem I because it's unworkable? And that's the subject of a companion or somewhat related case, the NRDC v. Wheeler. Yes, Your Honor. Why, if you're saying that we did something in Mexichem I that's unworkable for you, that we should issue the same unworkable ruling again? Your Honor, I think what it comes down to is, well, I would make two points. The first is that no one has disputed that if this court holds that it in fact has jurisdiction, it should reach the same result as in Mexichem I. And the answer that goes more directly to the substance of your question is we think Mexichem I is clear, at least to the extent in which it held that the EPA's authority was limited. As a practical matter, implementing that vacatur is difficult in light of EPA's existing regulations, and the court in that case did not consider what we consider to be an important issue there as to separability. But that issue is teed up in NRDC v. Wheeler, and I think we fully expect it will be resolved there. Ultimately, whatever Mexichem I did, however NRDC v. Wheeler goes, it's our position that this court is bound to reach the same result in Mexichem II as it did in Mexichem I. Your Honor, we would also note in agreement with petitioners that we feel that the case for collateral estoppel here is even stronger than the case for stare decisis. Not only was this issue actually litigated in proceedings in which interveners participated, it was briefed multiple times, and the interveners briefed this issue. Judge Wilkins, in response to your question regarding Boeing's position in this case, they have represented to me, and we noted in, I believe, our proposal in the briefing schedule in this case, and I believe again in our brief, that they support partial vacatur, and they have chosen not to participate in this proceeding. I didn't see that. Maybe I missed it. Anyway, I can go back and look. All I saw was that Boeing has not filed anything in this case. I believe there is a... I'm confident there is a footnote in at least the proposal we made on the briefing schedule that notes Boeing's position. I cannot recall off the top of my head whether we reiterated that in our brief. Your Honor, there is a... Interveners argued in their brief, page 19, that EPA bans sulfur hexafluoride as a substitute propellant because of its global warming potential, and that was done in 1996. And so they say that that showed clearly that over 20 years ago this issue was foreshadowed. What's your response to that? I think our primary response, Your Honor, is again that goes to the substance of the jurisdictional question and that that is essentially an argument that Mexican I got this issue incorrect, but doesn't address the key question of whether or not this court is bound by that. The other response I would give more on the substance is, regardless of whether EPA banned that chemical previously based on its global warming potential, what we're dealing with here is something slightly... changed the listing for a non-ozone-depleting chemical from unacceptable to acceptable. That wasn't, as I understand it, the situation with that chemical. You mean from acceptable to unacceptable? Correct. If I misspoke, I apologize. So your argument is that sulfur hexafluoride had never been deemed acceptable under the SNAP program by EPA. So it was deemed unacceptable, but it had never been deemed acceptable prior to that. Yes, that is correct. All right. I see that I am over time. Unless there are any other questions, we would ask that the petitions be granted to the same extent as in Mexican I. Thank you. Pardon us while I shift seats. Good morning, Your Honors. Thomas Lorenzen for the intervening respondents. Your Honors, the Mexichem I court never addressed its jurisdiction. Collateral estoppel stare decisis do not apply here. For collateral estoppel to apply, the issue not only must have been necessarily decided, it must have been actually decided. And there is nothing in the court's opinion that goes to actual decision on jurisdiction. What's your best case that the court actually has to say something when the issue is presented to it and argued and even discussed during oral argument? Well, there are a number of cases, including the Supreme Court's case in the Arizona school tuition decision, that say that jurisdictional issues that are decided sub salientio have no precedential effect. That is what petitioners are trying to argue here, is that even though the court is silent on jurisdiction, the court somehow decided this. I would point to, for instance, the dissenting opinion in Mexichem I, where Judge Wilkins noted that the statements regarding these alleged change in positions all occur in the context of EPA's Chevron Step 1 analysis, where statements regarding the agency's positions are simply not pertinent. So, and again, I can refer your honors to specific statements that the dissent makes. It was an excellent dissent. It was an outstanding dissent, your honor. It doesn't say anything about jurisdiction, though, right? It does not, but neither did the majority. And I take it that the dissent is responding to what the majority said. And the majority said the agency's statements regarding its position are relevant to our Chevron Step 1 analysis because they show the statute is clear. Actually, what the majority says is that the statute is clear because the word replace is capable of only one possible meaning. And as your honor points out, the agency's positions on what the statute means are just not pertinent to that inquiry. The problem you have is that if the court is ruling that there is a changed position, the court has to understand that, self-evidently, they have jurisdiction. And so the big difficulty you have here, the court is quite clear in saying, in the original position, right or wrong, they are quite clear in saying the agency has changed its position and, therefore, jurisdiction is clear. There's really nothing to talk. There are lots of cases, I'm sitting here thinking, lots of cases I've heard where someone has said there's no jurisdiction. We don't even deal with it because it's pretty straightforward. We have it merely because a party, and I understand your responses, but it was raised and it was raised and it was raised. But there are a couple of ways you can respond. You can say your jurisdictional argument has no merit, or you can say the thing that kills your jurisdictional argument, that is a changed position, is here and we find it. I understand, Your Honor. First of all, this is, I don't think, by any means, a case where jurisdiction is self-evident. Self-evident jurisdiction might occur where folks say that. No, no, no. It's only self-evident if the court finds it's a changed position. No, but I think that the court really didn't grapple with that. And I will tell you why. I mean, if there's a changed position, no one argued, well, wait, they're still out of the time limits. Because then everyone understood if there was a changed position, they were within the time limits. Well, again, that entire discussion occurs within the context of the Court's Chevron Step 1 analysis. It appears to be rhetorical flourishes that buttress its conclusion that the statute is absolutely clear on its face. But the Court never grapples with, indeed, never even cites, let me quote you, the language of the actual regulation promulgated in 1994. This is 40 CFR 82.174D. It provides in its entirety this. No person may use a substitute after the effective date of any rulemaking adding such substitute to the list of unacceptable substitutes. That's it. That is the clear language of the regulation promulgated in 1984. I'm sorry, 94. That regulation remains unchanged to this date. The 2015 rule. You're fighting the merits. No, no. I'm trying to understand. And it's not that you don't have an argument there, as the brilliant dissent pointed out. Extremely brilliant dissent, yes. But plus, the problem is the Court previously resolved against you. I disagree that the Court resolved the question at all. Again, its statements regarding this change of position, in addition to being wrong, in our view, and I get that's the merits, are nothing but dictum. They occur in the context and entirely in the context of its Chevron Step 1 analysis, which, as the dissent so brilliantly notes, it's not relevant to that. It's not pertinent. The agency's statements of its interpretations have no bearing on whether the statute is clear or unclear. And the Court's Chevron Step 2 analysis is one sentence and simply says, given our the word replace, petitioners also lose on Chevron Step 2. What more did they have to say? Well, once again, I think they need to satisfy themselves. Forget whether right or wrong, but what more, given that's the way they chose to analyze it, what more was there to say? I think what they had to say was that this is a timely challenge to the 2015 rule or a permissible years late, decades late challenge to the 1994 rule, for one of the reasons that's permissible under Clean Air Act Section 307B. There is no mention of Section 307B or a 60-day jurisdictional limit. There is no mention of any of the case law regarding timeliness of petitions and whether things are challenges to the current rule or prior rule. There is no mention of any of the case law regarding late challenges to old rules. None of this is addressed. Instead, we have a couple of sentences that say, the majority thinks EPA previously held a different interpretation. Look at these quotes from the responses to comments. I would note that there are similar quotes in that initial rule, and again, we're going right back to the merits again. This was all raised in 1994, and while the majority in Mexican I to the responses to the comments, this is from the preamble to the rule itself. Let me quote. A number of commenters believe that EPA's SNAP program has no authority to restrict existing substitutes, which companies may have switched to in an effort to eliminate the use of CFCs prior to the publication of this final rule. EPA believes that Class I and Class II substances are replaced within the meaning of Section 612C each time a substitute is used, so that once EPA identifies an unacceptable substitute, any future use of such substitute is prohibited. Under any other interpretation, EPA could never effectively prohibit the use of any substitute, as some user could always start to use it prior to EPA's completion of the rulemaking required to list it as unacceptable. And that's what happened with sulfur hexafluoride. It had been switched to before the rule was promulgated, and so, no, it didn't get placed on the acceptable list, but people were using it as a replacement for ozone-depleting substances. At the time the rule was promulgated, EPA looked at the health effects and said, no, you can't use this anymore because it's got this global warming potential, and it prohibited everyone. But that doesn't really help you because it's apples and oranges. I mean, sulfur hexafluoride was not a substance that EPA looked at, evaluated, and said, yes, this is an acceptable substitute. It's non-ozone-depleting, and we are putting it on the acceptable list, and then changed its mind later and said, we're taking it off of the acceptable list. Yeah, I don't think, with all respect, Your Honor, that that is apples and oranges. The holding of the majority of Mexican I is that 612C cannot apply to bar anyone who has previously switched away from an ozone-depleting substance from ceasing use of the substitute. It's an absolute ruling by the court. Chevron, step one, they say. Replace means the first time you use something, and only the first time. So it's not apples and oranges. And it shows that the court wasn't ruling on whether EPA exceeded its authority when it delisted, or I guess it didn't even delist. I mean, it just said sulfur hexafluoride isn't an acceptable substitute. The court wasn't passing on that issue. Well, there was no court decision there. This is just an EPA action. I guess all I'm saying, though, is that that example doesn't undermine the majority's reasoning in Mexican I because the majority wasn't passing upon it. I don't even think it was really discussed in the briefing. It was definitely not discussed in the opinion. Right, but what this shows is, you know, the agency's position about the absolute bar on use has been consistent from 1994. It says so in the 94 rule. It says so in the placement of the sulfur hexafluoride on the unacceptable list. There was no limitation of the effect of that move to those who hadn't yet switched, which we would have expected were the majority right. Now, again, we're getting into the merits. I understand Your Honor wants to ---- You're in the merits. There's no question. I mean, you're saying you're in a hopeless situation if the majority in the prior case had started the analysis by saying there's been a whole lot written about jurisdiction, we find no merit because the agency has changed its position, and then the rest of the opinion is exactly the same. Then you're out of court. Is that what you're saying? I think that, first of all, the court didn't say anything about jurisdiction. No, no, no. Come on, Counselor. Come on. You know what I'm saying. I understand. Had the court expressly resolved jurisdiction ---- Had the court done what I just said, one sentence, there's been a lot argued about jurisdiction, we find no merit because, as we will explain, the agency has changed its position. That's one sentence. Right. Is that enough? Our remedy in that case, Your Honor, would have been to seek further review of the decision. I agree. You did seek further review, and you lost in both places. Well, one is summary ---- All right. Let's assume the further review isn't going to make it. Are you in trouble now? You can't make your argument now, right? If the court actually ---- No, no. Come on. Take it ---- If the court actually resolved jurisdiction ---- Don't change my hypo. I am not. I'm trying to understand your argument. One sentence, the sentence I just gave you, that's the sentence they started the analysis with, and then everything else is the same. You lose now, right? In that circumstance, had the court addressed its jurisdiction expressly as you said, yes, that would be a problem. But it did not. I would also suggest, Your Honors, that if you believe that the court did resolve its jurisdiction and that we're bound by the decision, despite the errors in that decision that Judge Wilkins pointed out in his dissent, the thing to do here, if you must, is suggest en banc review. You could say that this ---- we believe this decision is incorrect. Was an en banc review suggested following the 15 decision? It's the same merits question. Well, no, but it was really not clearly presented there because the opinion is ---- The request for en banc review wasn't clear? Well, first of all ---- See, the problem you've got to understand is an institutional matter, what we face all the time. We're bound by the law of the circuit. We're bound by what a prior panel says. We have ways to deal with that. And there are a lot of times we look at a prior opinion and we may say, you know, I don't quite see it that way. But if it's the law of the circuit, it's the law of the circuit. Well, again, had the Court expressly addressed its jurisdiction ---- That's what I'm trying to understand. That's your sole argument. And I don't think ---- Of course, that is our argument. The Court did not address its jurisdiction. There is no mention of jurisdiction in this opinion. There is no mention of Clean Air Act Section 307b1. There is no mention of late challenges to prior rules. There is none of that there. There is no attempt to grapple with the very absolute language of 82.174d and the express bar that poses ---- that imposes on any user of a substance once it's been moved to the unacceptable list. There's none of that. And you would expect to see that in the decision, particularly where the issue was, as Your Honor notes, raised in briefs and argued. Again, the very minimal statements the Court made are all in the context of its Chevron Step 1 argument, whereas the dissent points out expertly, it's not relevant. It's not pertinent. It's dictum. It is rhetorical flourish designed to support the Court's conclusion the statute is absolutely clear. And that is really the essence of this thing. I don't believe that in this circumstance, well, the case law says if the Court didn't address jurisdiction, it's not precedential. Collateral estoppel doesn't apply in that instance. Stare decisis doesn't apply in that instance. And I think it behooves the Court not to extend the mistakes of a prior decision where there is an opportunity to rectify those. And here there was no resolution of the jurisdictional issue. The Court may and should examine the jurisdictional issue anew and determine that these petitions are not to the And the 1994 rule, which is the thing that spells out the legal consequence, that the Petitioners are actually challenging. The Court should address this, should dismiss the decision. If it feels it's bound by the prior decision, I would urge the Court to state its disagreements with that decision and suggest that the Court review this en bas to correct that error. All right. Thank you. Thank you, Your Honor. Counsel for Petitioners? Boeing's representation to EPA is reflected in footnote 6 on page 18 of EPA's brief. On collateral estoppel, the only argument my friend Mr. Lorenzen made that's addressed to our collateral estoppel argument is that jurisdiction wasn't addressed in Mexican I because it wasn't discussed. And he says that because of the absence of discussion, there can't be either stare decisis or collateral effect. Whatever one may think about stare decisis, that's just not right as far as collateral estoppel is concerned.  There's a trilogy of decisions from this Court decided in 1990s that we discuss on pages 9 to 10 of our reply brief that make that abundantly clear. Implicit holdings are more than sufficient for collateral estoppel purposes. Again, whatever you might think about stare decisis. And these decisions say that the fact that the Court was not explicit in its finding is irrelevant to the preclusive effect of a decision. Issue preclusion is applicable if resolution of an issue is necessary to the judgment, even when the opinion is silent on that issue. The judgment bars relitigation of an issue necessary to the judgment, even in the absence of any opinion. And, of course, there was not only an opinion here. There were two opinions totaling 44 pages. So quite apart from what we think is just sort of a common sense proposition, that it is exceedingly hard to believe that the Court had no view one way or the other on whether it had jurisdiction in issuing 44 pages of opinions. If the Court hadn't issued any opinion, because the issue was raised and contested and then relief on the merits was granted, its decision would have collateral estoppel effect. If the Court has no further questions, we would ask the Court to grant petitioners the same relief that was granted in Mexican I. Thank you. Petitioner, please stand by.
judges: Rogers, Wilkins, Edwards